UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CRAIG HOFFMAN, | ) | |
| | ) | Civil No. 11-149-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| RELIANCE STANDARD LIFE | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for summary judgment, which the Court construes as a motion to overturn the administrative decision that terminated Hoffman's long-term disability benefits and a motion to uphold that decision. [R. 19; R. 20.] This matter is fully briefed, [R. 21; R. 22] and for the reasons set forth below, the Court will uphold the decision.

**I.**

This case presents issues for the Court to consider under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. The important facts in this case are undisputed. The conclusions that were reached on the basis of the facts, however, are in dispute.

Hoffman began working for RSC Equipment Rental (RSC) on June 26, 2006. [AR 144[1].] On January 1, 2007, Hoffman became eligible to participate in RSC's employee welfare benefit

---

[1] To maintain consistency with the briefs, citations will use page numbers from the Administrative Record when available.

plan, including RSC's disability insurance program. [R. 20, Ex. 2 at 4.] Eleven months later, on November 30, 2007, Hoffman stopped working at RSC and submitted a claim for disability benefits. [*Id*. at 2.] Initially, Hoffman was only eligible for short-term disability benefits, which were quickly approved by Reliance Standard.[2] [R. 20, Ex. 2 at 2, n.1; AR 332-33.] In April 2008, Hoffman became eligible for long-term disability benefits and submitted the necessary application and medical documentation. [AR 143-48.] In that application, Hoffman listed that the reason that he is unable to work as "shortness of breath,weak/emphysema, COPD" [sic].[3] [AR 145.] Hoffman's treating physician, Dr. Ralph Compton, Jr. M.D., submitted the necessary documentation in support of Hoffman's claim [AR 319-30], and on May 28, 2008, Hoffman began receiving long-term disability benefits. [AR 297-98.]

Hoffman was paid a monthly benefit for almost two years. But via letter dated April 27, 2010, Reliance Standard notified Hoffman that his long-term disability determination was being reviewed. [AR 252-53.] This review was being undertaken because of concerns that Hoffman's claim might be subject to a pre-existing condition exclusion. [*Id*.] The April 27th letter explained that for Hoffman to remain eligible he must submit additional medical records. [*Id*.] Hoffman submitted the requested information, and Reliance Standard sent notice on May 20, 2010 that his benefits were being terminated because of a pre-existing condition. [AR 224-26.]

The pre-existing condition exclusion states that "[b]enefits will not be paid for a Total Disability: (1) caused by; (2) contributed to by; or (3) resulting from; a pre-existing condition

---

[2] Matrix Absence Management helps Reliance Standard in their disability determinations and plan management. The distinction is irrelevant for the purposes of this case, and so Reliance Standard will be used when describing either party. [*See* R. 19, Ex. 1 at 2 n.2; R. 20, Ex. 2 at 2 n.1.]

[3] "COPD is an acronym for 'chronic obstructive pulmonary disease,' which includes asthma, chronic bronchitis, certain types of emphysema and other conditions." *Glen Coal Co. v. Office of Workers' Compensation Programs*, 77 F. App'x 878, 883, at *4 n.5 (6th Cir. 2003) (quoting *Glen Coal Co. v. Seals*, 147 F.3d 502, 509 n.6 (1998)); *see also A&E Coal Co. v. Adams*, 2012 WL 3932113, at *1 (6th Cir. Sept. 11, 2012) (explaining that a

unless the Insured has been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date he/she became an Insured." [AR 30.] Because Hoffman was not benefit-eligible for that amount of time before submitting his disability claim, "any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the Insured's effective date of insurance" would result in a denial of benefits. [AR 47.] Hoffman's eligibility date was January 1, 2007, so the pre-existing analysis is based on medical records from October 1, 2006 through December 31, 2006. [R. 20, Ex. 2 at 4.]

Reliance Standard sought medical records from Hoffman's treaters for the aforementioned period, and Dr. Ralph Compton responded that Hoffman had sought medical treatment from him on December 18, 2006. [AR 229-33.] Compton described his doctor/patient relationship with Hoffman in a subsequent letter, writing that he started treating Hoffman on April 5, 2006. [AR 215.] His diagnosis at that point was "chronic persistent asthma," and Hoffman was prescribed medication and advised to stop smoking. [*Id.*] Compton stated that Hoffman's December appointment was for a physical and a follow-up on his asthma. [*Id.*] This was at least Hoffman's fourth time to receive treatment from Dr. Compton. [*See* AR 231.] Compton wrote in his treatment notes that Hoffman was "having no new problems" but that he "get[s] short of breath with minimal to moderate exertion." [AR 233.] In those notes, Compton also summarized his "Impression":

> Asthma/COPD. Clinically is not in as good a shape as I would like to see. He was advised that he will likely continue to worsen and he was encouraged to enroll himself in a smoking behavioral program. Albuterol was refilled and he is going to be scheduled for a serum theophylline level. Will schedule a pulmonary GXTT

---

diagnosis of COPD includes "bronchitis, small-airways disease, and emphysema").

3

to assess his aerobic capacity.

[*Id.*]

Reliance Standard's review of the record from Hoffman's December 18, 2006 appointment caused it to reverse its decision and stop paying Hoffman's benefits. [AR 224-26.] Reliance Standard explained that Hoffman's disability claim was based on "a diagnosis of long standing premature emphysema/COPD/chronic obstructive pulmonary disease confirmed by pulmonary function testing and CT scan." [AR 225.] Further, the "[i]mpression of treating physician indicates diagnosis of asthma/COPD." Hoffman's prescription records were also cited as evidence of a pre-existing condition because he filled prescriptions that are "related to the treatment of Asthma and COPD."[4] [*Id.*] Reliance Standard did not, and has not, denied that Hoffman is disabled. [R. 19, Ex. 1 at 1.]

Hoffman appealed the denial of his benefits, pursuing one argument that is renewed in this action: treatment for chronic persistent asthma is distinct from emphysema, and Hoffman was only treated for asthma. [AR 212.] Hoffman based his argument on a letter written by Dr. Compton. In it, Compton stated that although he wrote "asthma/COPD," he "detected nothing clinically different from Mr. Hoffman's two previous visits that spring." [AR 215.] Compton also wrote that as of August 2007 he still believed Hoffman had chronic persistent asthma, though additional testing was advised. [*Id.*] That testing, conducted in October, 2007, led to a diagnosis of emphysema—a diagnosis that "surprised" Compton. [*Id.*]

Reliance Standard sought review of Hoffman's claim from Dr. Stephen Newman, a physician with whom it contracted. Newman reviewed and summarized Hoffman's file and then

---

[4] A report on the prescriptions Hoffman filled during October through December 2006 is included in the record. [AR 245-46.] Many of the medications that were filled before Hoffman's emphysema diagnosis continued to be prescribed after his diagnosis. [*Compare* AR 215 (listing date of emphysema diagnosis) *with* AR 232

4

responded to this question: Was the claimant's impairment at the date of loss (11/30/2007) caused by, contributed to by, or resulting from any of the conditions listed as treated between October 1, 2006 and January 1, 2007?" [AR 157.] He responded affirmatively:

> The claimant's impairment on 11/30/07 was caused by his serious respiratory conditions which were present and treated between October 1, 2006 and January 1, 2007. Specifically, the claimant has severe obstructive lung disease with characteristics of emphysema, COPD, as well as asthma with respiratory failure. The respiratory failure is almost never seen in the patient with asthma under chronic conditions.

[*Id*.] Hoffman responded to Newman's report by submitting a brief "review of the medical literature" with regards to asthma, emphysema, and COPD. [AR 187.] This did not convince Reliance Standard to change its decision, and this lawsuit followed. [R. 19, Ex. 1 at 5.]

## II.

Hoffman argues that Reliance Standard's decision denying his benefits should be reversed. Yet that decision is entitled to a high degree of deference. Hoffman concedes that the "arbitrary and capricious" standard is applicable here because the policy grants such discretion to Reliance Standard. [R. 20, Ex. 2 at 2.] The Court notes that if Reliance Standard had not retained such discretion, then Jones' challenge would be reviewed *de novo* by the Court. *University Hospital of Cleveland v. Emerson Electric*, 202 F.3d 839, 845 (6th Cir. 2000) ("It is by now well-established that courts review such challenges to benefit determinations under the de novo standard, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

When a Court reviews a benefit determination under the "arbitrary and capricious" standard, it should be upheld "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome . . . ." *Davis v. Ky. Finance Companies Retirement Plan*, 887

---

(Compton's listing of Hoffman's medication list by date of visit).]

F.2d 689, 693 (6th Cir. 1989). "Determining whether the plan administrator's decision was arbitrary and capricious means determining whether it was rational and in good faith, not right." *Dials v. SMC Coal & Terminal Co.*, 891 F.Supp. 373, 376 (E.D. Ky. 1995) (citing *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989). When conflicts of interest exist, however, as Hoffman alleges here, they "should be taken into account as a factor in determining whether the . . . decision was arbitrary and capricious." *University Hospital of Cleveland*, 202 F.3d at 846 (quoting *Davis*, 887 F.2d at 694). The Supreme Court recently reaffirmed that administrators acting in a dual capacity—as decision maker about benefits and payer of benefits—do have a conflict of interest and that when such a conflict is present, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 105 (2008) (citation omitted). Nonetheless, the weight a conflict is due depends on the circumstances of each individual case, and its existence is certainly not enough to change the review of the decision from deferential to *de novo*. *Id*. at 106.

### III.

Hoffman presents two challenges to Reliance Standard's decision.[5] First, Hoffman argues that Reliance Standard should be barred from denying benefits after paying them for two years based on evidence that was present throughout and absent medical improvement. For all intents and purposes, Hoffman's second challenge to Reliance Standard's decision is a factual one. Hoffman is asking this court to review the record and the weight of the evidence and reach a different conclusion than Reliance Standard.

### A.

---

[5] Reliance Standard characterizes Hoffman as pursuing three arguments, [R. 19, Ex. 1 at 7-13] but Hoffman

6

Hoffman's first argument is baseless. The cases Hoffman cites in support of his position are unenlightening as they involve dissimilar factual circumstances. In those cases, the insurer stopped paying benefits because it judged that the claimant's medical condition had improved or he/she no longer met the definition of disabled. [*See* R. 20, Ex. 2 at 12-13 (citing four cases).] The courts, as Hoffman notes, stated that benefits may not be terminated unless medical improvement takes place. [*Id*. at 13.] But context is important, and it is clear that the courts were only opining on termination of benefits with regard to medical improvement because that was the pertinent issue before them. The courts were not stating a limiting principle that granted insurers the ability to terminate benefits only upon medical improvement.

Reliance Standard explains that it still believes Hoffman is disabled. Further, Reliance Standard does not deny that it could have accessed Hoffman's records before 2010. In 2010, a routine review indicated that Reliance Standard might have a contractual justification for stopping payment: its preexisting condition analysis was either not completed or completed in error. Hoffman is essentially contending that Reliance Standard is estopped from denying benefits because it paid them for two years. While Reliance Standard's termination decision in 2010 may be many things, including a costly business error, as a purely legal matter, the Court is unaware of any authority that would prohibit Reliance Standard from reanalyzing and reversing a prior decision. Consequently, this argument is insufficient to justify reversing Reliance Standard's termination of benefits.

**B.**

Hoffman's second argument is that the preexisting condition exclusion should not apply to him. Hoffman's qualified disability was emphysema and COPD while the medical treatment

---

explains in his Response that the incontestability clause is not at issue [R. 22 at 8 n.3].

he received during the relevant time period was focused on chronic persistent asthma—an unrelated condition. The record is replete with information about Hoffman's treatment for asthma, even between October and December 2006. [*See, e.g.*, AR 215.] The record also shows that Dr. Compton had the "impression" that Hoffman might be suffering from COPD. [AR 233.]

Reliance Standard refutes Hoffman's argument by citing to his medical history, and in particular his persistent breathing problems. [*Id.*; *see, e.g.*, AR 215.] Hoffman was diagnosed with asthma, perhaps as early as 1995, [AR 319] and Compton affirmed that diagnosis in April 2006. [AR 215.] In December 2006, Hoffman presented to Compton and reported that he did not have any new problems but continued to be short of breath. [AR 233.] Compton's recorded impression of that appointment indicated that Hoffman was suffering from "asthma/COPD." [AR 233.] Compton clearly believed Hoffman's breathing problems were due to asthma, and on the December visit, Compton's record indicates he thought COPD might be a cause.

Hoffman tries to explain away Dr. Compton's diagnosis, and Dr. Compton wrote a letter renouncing his previous position, stating he did not notice any clinical difference in Hoffman. [AR 215.] Hoffman places significant emphasis on the fact that Compton reportedly only treated Hoffman *for* asthma. [R. 20, Ex. 2 at 15.] But the diagnosis of COPD still remains a part of the record, and shortness of breath is a symptom of COPD.[6] Simply, the condition of shortness of breath could be due to multiple and potentially unrelated causes. For instance, shortness of breath could be due to asthma and COPD.

Deciding that Reliance Standard is correct in its assessment is more than the Court is required to do. Instead, Reliance Standard must merely show that there was a rational basis for

---

[6] Compton also scheduled a test of Hoffman's aerobic capacity and prescribed multiple drugs that Hoffman continued to take after he was diagnosed with emphysema during the December 2006 appointment.

its decision. Compton's record provides ample support for the Court to conclude that Reliance Standard cleared that modest hurdle. Reliance Standard, however, also introduced evidence from Dr. Newman, as outlined above. Even discounting his opinion as one of a conflicted party, Reliance Standard's evidence is still bolstered, however minimally, by Newman's conclusion. As a result, the Court concludes that no abuse of discretion has occurred.

## IV.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Reliance Standard's decision is affirmed and its motion [R. 19] to uphold the administrative decision is **GRANTED.** Hoffman's motion [R. 20] to overturn the administrative decision is **DENIED.**

This 28th day of September, 2012.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge